UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FAIRBANK RECONSTRUCTION CORP.,                **REPORT AND**
d/b/a FAIRBANK FARMS,                          **RECOMMENDATION**

                           Plaintiff,            13-CV-00907-WMS-JJM

v.

GREATER OMAHA PACKING
COMPANY, INC.,

                 Defendant/Third Party Plaintiff.

v.

BEEF PPRODUCTS, INC.,

                 Third-Party Defendant.
_____

## INTRODUCTION

            This action has been referred to me by Hon. William M. Skretny for supervision

of  pretrial proceedings, including preparation of a Report and Recommendation on dispositive

motions [12]. [1]  Before me are motions for summary judgment by plaintiff  Fairbank

Reconstruction Corp., d/b/a Fairbank Farms ("Fairbank") [71] and third party defendant  Beef

Products, Inc. ("BPI") [72]. Oral argument was held on August 11, 2015 [88].  For the following

reasons, I recommend that Fairbank's motion be granted in part and denied in part, and that

BPI's motion be granted.

_____

[1]        Bracketed references are to CM-ECF docket entries.

**BACKGROUND**

Fairbank engages in the business of processing and selling ground beef, utilizing raw trim supplied by beef slaughter establishments such as defendant Greater Omaha Packing Company, Inc. ("GOPAC").  Complaint [1], ¶11.  It commenced this action on September 6, 2013, seeking recovery against GOPAC for breach of contract, breach of express warranty, and breach of implied warranties of merchantability and fitness, alleging that GOPAC sold it raw beef trim tainted by *E. coli* bacteria which resulted in several illnesses in the Northeastern United States in the fall of 2009 (the "Northeast Outbreak"), causing Fairbank to recall its own beef product (incorporating the GOPAC trim) and sustain economic loss.  Id., Counts Two – Five.

On March 31, 2014 GOPAC moved for leave to file a Third Party Complaint seeking indemnification and/or contribution from BPI, alleging that meat supplied by BPI to Fairbank was the cause of the Northeast Outbreak [42].  In a Report, Recommendation and Order dated October 28, 2014, I recommended that the motion be granted "to the extent that [GOPAC] seeks contribution from BPI based upon tort rather than contract, with BPI reserving its right to contest its liability to GOPOAC".  [57], p. 5.  That recommendation was adopted by Judge Skretny on December 1, 2014 [58], and GOPAC thereafter filed and served the Third Party Complaint [59].

**ANALYSIS**

**A.     Fairbank's Motion**

In moving for partial summary judgment, Fairbank relies upon the doctrine of collateral estoppel, which "bars relitigation of a specific legal or factual issue in a second proceeding where (1) the issues in both proceedings are identical, (2) the issue in the prior

proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits". Grieve v. Tamerin, 269 F.3d 149, 153 (2d Cir. 2001). The doctrine also prevents parties from relitigating claims that they "could have raised" in a prior action. Madura v. Bac Home Loans Servicing, LP, 593 Fed. App'x 834, 843 (11th Cir. 2014), cert. denied 136 S. Ct. 133 (2015) (emphasis added).

Fairbank argues that "GOPAC has had a full and fair opportunity to litigate its fault for the Northeast Outbreak in four cases - including before two juries, both of whom found against GOPAC and in favor of Fairbank . . . . At some point, GOPAC may no longer be heard to deny its responsibility . . . . Specifically, Fairbank seeks summary judgment on the following issues: (1) a contract called the "Fairbank Guarantee" governs the relationship between the parties; (2) GOPAC breached the Fairbank Guarantee by delivering adulterated raw beef containing *E. coli* O157:H7 to Fairbank in September 2009; (3) Fairbank acted as a reasonable buyer in using the adulterated raw been delivered by GOPAC in September 2009; (4) GOPAC's delivery of adulterated raw beef containing *E. coli* O157:H7 to Fairbank constituted a breach of GOPAC's contract with Fairbank and of its express and implied warranties; and (5) the adulterated raw beef containing *E. coli* O157:H7 that GOPAC delivered to Fairbank caused the Northeast Outbreak and Fairbank's resulting damages. In addition, because these issues also dispose of all of GOPAC's affirmative defenses except those directed solely to damages (and personal jurisdiction), Fairbank also seeks summary judgment on GOPAC's first through eighth, eleventh, twelfth, and fourteenth through eighteenth affirmative defenses." Fairbank's Memorandum of Law [71-1], pp. 2-3. While conceding that summary judgment is appropriate as to the first issue (that the Fairbank Guarantee governs the parties' relationship), GOPAC argues

that "Fairbank is not entitled to summary judgment on issues two through five". GOPAC's

Memorandum of Law [78], p. 10.

As Fairbank points out, each of the arguments which GOPAC raises in opposition

to summary judgment on issues 2 and 3 has been repeatedly considered and rejected by other

courts,[2] and therefore should not be reconsidered yet again by this court. *See, e.g.*, <u>Jones</u>, 2013

WL 6019294, **8-9:  "In the Court's assessment, [collateral estoppel] is satisfied with respect to

the following issues:  . . .  (2) GOPAC delivered adulterated ground beef containing *E. coli*

O157:H7 to Fairbank in September 2009; and (3) Fairbank acted as a reasonable buyer in using

the adulterated ground beef by GOPAC in September 2009 . . . . These three issues are . . .

identical to the express warranty issues litigated and determined in the <u>Long/Smith</u> case.  The

determination of these three issues was undoubtedly essential to judgment.  Therefore, the Court

concludes that the prior final verdict and judgment entered as a result of the <u>Long/Smith</u> trial and

later affirmed by the First Circuit does collaterally estop both parties from re-litigating the listed

issues at any future trial on the pending claims.  *See* <u>Precourt</u>, 856 F.Supp.2d at 337–340

(similarly finding collateral estoppel prevents re-litigation of these three issues following the

<u>Long/Smith</u> trial)".

Therefore, I recommend that Fairbank be granted partial summary judgment

determining  that:  (1) the Fairbank Guarantee governs the relationship between the parties; (2)

GOPAC breached the Fairbank Guarantee by delivering adulterated raw beef containing *E. coli*

O157:H7 to Fairbank in September 2009; (3) Fairbank acted as a reasonable buyer in using the

---

[2]     <u>Long v. Fairbank Reconstruction Corp.</u>, 701 F.3d 1 (1st Cir. 2012); <u>Precourt v. Fairbank</u>
<u>Reconstruction Corp.</u>, 856 F. Supp. 2d 327 (D.N.H. 2012); <u>Jones v. Fairbank Reconstruction Corp.</u>, 2013
WL 6019294 (D. Me. 2013); <u>Blevio v. Shaw's Supermarkets, Inc.</u>, 2015 WL 3869107, (D. Conn.  2015).

adulterated raw beef delivered by GOPAC in September 2009; and (4) GOPAC's delivery of adulterated raw beef containing *E. coli* O157:H7 to Fairbank constituted a breach of GOPAC's contract with Fairbank and of its express warranty that its beef would be negative for *E. coli* O157:H7.[3]

However, I take a different view with respect to Fairbank's request for summary judgment declaring that GOPAC caused the entire Northeast Outbreak and Fairbank's resulting product recall.  During the <u>Long/Smith</u> case, counsel for Fairbank proposed to submit the question of GOPAC's responsibility for the Northeast Outbreak to the jury, explaining that "there are multiple cases pending in multiple jurisdictions . . . . And the hope was that the outcome here ought to have some effect going down the road for the sake of everybody.  So . . . I was going to suggest some language that I think might be important for use by future courts". <u>Long/Smith</u> transcript [77-2], p. 1317.  GOPAC's counsel objected, arguing that "this is about Long and Smith, it's not about Northeast Outbreak, it's not about 25 plaintiffs, it's about Long and Smith".  <u>Id.</u>, p.1318. The trial judge (Hon. George Singal) rejected Fairbank's proposal, stating that "plaintiff's request[ed] language about . . . the Northeast Outbreak adds a lot of issues here that really aren't - - would just confuse the jury".  <u>Id.</u>, p.1327.

If it had already been determined that GOPAC caused the Northeast Outbreak, then logically Fairbank would be entitled to summary judgment that GOPAC had caused the illness of each victim who had been identified as part of that event.  However, Fairbank's request

---

[3]     Although Fairbank initially requested summary judgment as to breach of express *and implied* warranties (Fairbank's Memorandum of Law [71-1], p. 2), it later narrowed that request to express warranties only.  <u>Id.</u>, pp. 10, 25. Therefore, Fairbank is entitled to summary judgment that it breached its express warranty that it would "follow all of the Buyer[']s instructions as outlined in [the] Raw Material Specifications", namely that "all raw materials supplied . . . will be negative for E. coli O157-H7". Fairbank Guarantee [71-5], pp. 2 and 12 of 21.

for such a determination has repeatedly been rejected.  For example, in <u>Precourt</u>, Fairbank argued that since the jury in <u>Long/Smith</u> had determined that GOPAC's beef had caused the illnesses of Northeast Outbreak victims Margaret Long and Alice Smith, Fairbank was entitled to summary judgment determining that GOPAC's beef had also caused the illness of Carolyn Black, since "the CDC [Center for Disease Control] determined that Black's illness was part of the Northeast Outbreak".  856 F. Supp. 2d at 336.

Rejecting that argument, the court reasoned that it "can only be the basis for summary judgment on Fairbank's crossclaims so long as there is also undisputed evidence that: (1) illnesses from *E. coli* O157:H7 that are part of the same CDC cluster necessarily spring from the same original source; or (2) samples of *E. coli* O157:H7 with genetics that match - whatever that may mean - necessarily originated from the same source.  Fairbank has produced no evidence to establish either of those two propositions, much less undisputed evidence. Moreover, GOPAC has produced evidence to the contrary in the form of trial testimony in the Maine case concerning the person in California who ate no beef at all, but was still sickened by *E. coli* O157:H7 that genetically matched the *E. coli* that sickened Black, Long, and Smith . . . . Because Fairbank has not produced undisputed evidence linking Black's illness and death to the beef trim GOPAC delivered to Fairbank, it is not entitled to summary judgment on its crossclaims." <u>Id.</u> at 337.

The same argument was also rejected in <u>Cohen v. Fairbank Reconstruction Corp.</u>, 35 Misc. 3d 1205(A), 2012 WL 1109381 (Sup. Ct. Albany Co. 2012), involving Susan Cohen, another victim of the Northeast Outbreak.  "There is simply no identity of issue between the <u>Long/Smith</u> actions' findings and Ms. Cohen's consumption of E. Coli 0157:H7 contaminated beef. Ms. Cohen's consumption and injury were neither at issue in the <u>Long/Smith</u> actions nor

material to that action.  Instead, they are wholly irrelevant.  Nor is there any logical basis to equate, as identical, Ms. Cohen's adulterated beef consumption and the <u>Long/Smith</u> plaintiffs' consumption of tainted beef.  Simply put, GOPC's delivery to Fairbank of the E. coli 0157:H7 contaminated beef that sickened the <u>Long/Smith</u> plaintiffs, does not necessarily prove that Fairbank used GOPC's tainted beef in processing the contaminated beef Ms. Cohen ingested . . . .  [A]lthough it is uncontested that Ms. Cohen and the <u>Long/Smith</u> actions' plaintiffs were all injured by tainted beef Fairbank processed, Fairbank failed to establish that it received all of that contaminated beef from GOPC.  The USDA's inclusion of all three Plaintiffs within its Northeast Outbreak table is, by itself, insufficient to establish Fairbank's supplier."  <u>Id.</u>, **2-3.

Finally, in <u>Jones</u> the court concluded that the fact that plaintiff's son (M.J.) was "sickened as part of . . . the 2009 Northeast Outbreak" did not warrant a finding as a matter of law that GOPAC caused M.J.'s illness.  "[T]he jury in the <u>Long/Smith</u> case made two specific causation findings: (1) Adulterated raw beef, which GOPAC delivered to Fairbank in September 2009 and which Fairbank then ground, was later consumed by Long causing her injuries . . . . (2) Adulterated raw beef, which GOPAC delivered to Fairbank in September 2009 and which Fairbank then ground, was later consumed by Smith causing her injuries . . . . The pending case does not raise an identical causation question that can be definitively answered by these findings. Rather, this case poses a unique causation question not posed or answered in the <u>Long/Smith</u> case:  Did M.J. consume adulterated beef that Fairbank had ground from GOPAC adulterated raw beef?  Absent evidence suggesting that M.J. ate from the same package of ground beef consumed by Long or Smith, the causation findings from the <u>Long/Smith</u> trial do little, if anything, to prove the proximate cause of M.J.'s injuries by a preponderance of the evidence." 2013 WL 6019294, **3, 9.

For these reasons, I agree with GOPAC that "no judge or jury has determined that GOPAC was the source of the Northeast Outbreak or the cause in fact of Fairbank's recall" related to that outbreak. GOPAC's Memorandum of Law [78], p. 25). Therefore, I recommend that Fairbank's motion for summary judgment as to that issue be denied.

Fairbank also moves for dismissal of several of GOPAC's affirmative defenses. Fairbank's Memorandum of Law [71-1], pp. 22-24. In view of my recommendations as to the issues determined by collateral estoppel, I further recommend that this portion of the motion be granted as to the affirmative defenses which are completely inconsistent with those recommendations (namely, GOPAC's first, second, sixth, seventh, twelfth, fourteenth, fifteenth, sixteenth, seventeenth and eighteenth affirmative defenses), but otherwise be denied.

**B.     BPI's Motion**

In moving for summary judgment dismissing the Third Party Complaint, BPI argues, *inter alia*, that in connection with Fairbank's Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the District of Delaware (Case No. 12-11127 (MFW)), Fairbank released all claims against BPI, as a result of which GOPAC's tort-based claim for contribution from BPI is barred by N.Y. General Obligations Law ("GOL") §15-108. BPI's Memorandum of Law [72-1], pp. 15-18. GOL §15-108 (b) provides that "[a] release given in good faith by the injured person to one tortfeasor . . . relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules".

In opposing the motion, GOPAC argues that the bankruptcy court "expressly preserved GOPAC's third party claims". GOPAC's Memorandum of Law [80], p. 14. I disagree. Under the global settlement reached in the bankruptcy court, Fairbank (one of the bankruptcy

debtors) released several parties, including BPI, from "any and all claims . . . existing or contingent, known or unknown . . . from the beginning of time to the Effective Date". Settlement Term Sheet [72-4], pp. 41-42 of 146.  The "Effective Date" was October 9, 2013. BPI's Memorandum of Law [72-1], p. 16, n. 5; BPI's Reply Memorandum [84], p. 3, n. 1.

      The bankruptcy court's July 2, 2013 "Order Approving Revised Global Settlement" ([72-4], pp. 27 of 146, *et seq.*) provided that  "as of the Settlement Effective Date, the Releases contained in the Revised Settlement shall become binding and enforceable" " (id., p. 30 of 146, ¶6), and that "[t]he provisions of the Order and the Settlement Term Sheet . . . shall survive entry of any order that may be entered . . . confirming any plan of reorganization or liquidation in the Debtors' cases".  Id., p. 31 of 146, ¶11.

      In opposing BPI's motion, GOPAC argues that the bankruptcy court's subsequent Confirmation Order dated March 7, 2014 [79-45] "states that 'the confirmation of the Plan shall have no preclusive effect or any substantive effect whatsoever on any . . . *third party* claims or defenses that have been or may hereafter be pled in the GOPAC litigation, or any other litigation to which GOPAC is or becomes a party'".  GOPAC's Memorandum in Opposition [80], p. 15 (*quoting* the Confirmation Order [79-45], p. 38, ¶45) (emphasis in original).

      However, it is not the "confirmation of the Plan" that precludes GOPAC's third party claims - instead,  it was the prior release of Fairbank's claims against GOPAC that precluded GOPAC's right of contribution (by virtue of  GOL §15-108).  The Confirmation Order states explicitly that "[f]or the avoidance of doubt, nothing in this paragraph or otherwise in this Confirmation Order shall, or shall be construed to, give the Debtors or GOPAC any rights, defenses or claims in the GOPAC litigation or the GOPAC Related Cases that were not already in existence prior to the entry of this Confirmation Order".  [79-45], p. 38, ¶45.

As BPI points out, "the Confirmation Order could not provide GOPAC the right to seek contribution from BPI when that right was not already in existence prior to the entry of the Confirmation Order . . . . The bankruptcy court entered the Confirmation Order on March 7, 2014.  Prior to that date, the bankruptcy court had already approved the Global Settlement and BPI already had a 'binding and enforceable' release . . . . Any theoretical right that GOPAC had to seek contribution from BPI related to the Northeast Outbreak was eliminated before the bankruptcy court entered the Confirmation Order.  That right was eliminated by the Global Settlement.  The Confirmation Order could not, and did not, resurrect something that did not exist at the time it was entered."  BPI's Reply Memorandum [84], p. 5.

Therefore, I conclude that BPI is entitled to dismissal of GOPAC's Third Party Complaint.  In light of this conclusion, I need not address BPI's alternative arguments.

## CONCLUSION

For these reasons, I recommend that Fairbank's motion for partial summary judgment [71] be granted in part and denied in part, and that BPI's motion for summary judgment [72] be granted.  Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the clerk of this court by March 28, 2016 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)).  Any requests for extension of this deadline must be made to Judge Skretny.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the

magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

        The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

DATED:   March 9, 2016

                                 <u>/s/ Jeremiah J. McCarthy</u>
                                   JEREMIAH J. MCCARTHY
                                   United States Magistrate Judge