UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FAIRBANK RECONSTRUCTION CORP.,
d/b/a FAIRBANK FARMS,

        Plaintiff,

    v.

GREATER OMAHA PACKING COMPANY, INC.,

        Defendant.

**DECISION AND ORDER**

13-CV-907S

## I. INTRODUCTION

In this case, Plaintiff Fairbank Reconstruction Corp. ("Fairbank") seeks to hold defendant Greater Omaha Packing Company, Inc. ("GOPAC") liable for harms caused by the presence of E. coli in beef that GOPAC supplied to Fairbank in 2009. After Fairbank was sued by consumers sickened by the ground beef, it sought indemnification from its supplier, GOPAC. Following litigation in federal courts in Maine and New Hampshire and in New York state court, Fairbank commenced the present action before this Court seeking contractual indemnification and recovery for breach of contract and breach of warranties for losses it sustained as a result of the tainted meat GOPAC provided to it.

Addressing an earlier motion for summary judgment by Fairbank, GOPAC conceded the preclusive effect of prior court holdings that a contract between the parties, the "Fairbank Guarantee," governed the parties' relationship and that Fairbank acted as a reasonable buyer in their transaction. (See GOPAC's Memorandum in Opposition to Summary Judgment, May 15, 2015, Docket No. 78 at p. 10.) More than two-and-a-half years after that concession, after it discovered what it claims is new evidence that

1

Fairbank was not in contractual privity with GOPAC, GOPAC moved to amend its answer and moved for reconsideration of the prior grant of summary judgment. (Docket No. 134, filed on February 25, 2019.) On February 10, 2020, this Court adopted the Report and Recommendation of Magistrate Judge McCarthy denying both motions, finding that GOPAC had failed to exercise the requisite reasonable diligence. (Order, Docket No. 169.)

Presently before this Court is GOPAC's motion seeking certification of this Court's February 10, 2020, order for interlocutory appeal, and seeking a stay of proceedings pending appeal. (Docket No. 174.) GOPAC asserts that an interlocutory appeal is warranted because this Court used an erroneous "inquiry notice" in denying GOPAC's motions. For the following reasons, GOPAC's motion is denied.

## II.  BACKGROUND

**a) The Fairbank Guarantee, the E. coli outbreak, and earlier litigation**

Fairbank is in the business of processing and selling ground beef. (Complaint, ¶ 11.) GOPAC supplies beef trim to processors such as Fairbank. (Id., ¶ 12.)

Sometime in 2009, GOPAC supplied beef trim to Fairbank, which ground it and sold it to supermarkets. (Id., ¶¶ 1-4, see also Id. at pp. 37-39.) Some of this beef was tainted with E. coli, and some purchasers of the beef were sickened after consuming it. (Id. at p. 37.) After settling with those purchasers, Fairbank sought indemnification from GOPAC. (Id., ¶¶ 2-3.) The indemnification action in Maine resulted in holdings that GOPAC had delivered adulterated raw beef to Fairbank, that Fairbank had acted as a reasonable buyer in using the beef GOPAC supplied to it, and that the Fairbank

2

Guarantee governed the relationship between the parties. (Id., ¶¶ 4, 29; Id., exhibit C, at pp. 41-42.)

### b) Procedural History

Against this backdrop, Fairbank brought the present action against GOPAC in this Court, seeking a declaratory judgment that GOPAC violated the Fairbank Guarantee and seeking damages for breach of contract, breach of express warranty, and breach of the implied warranties of merchantability and fitness for implied purpose. (Id., ¶¶ 28-39, 42-47, 50-54, 57-62, 65-71).

This Court referred this matter to Magistrate Judge McCarthy, who issued a Case Management Order. (Docket Nos. 12, 19.) A Second Amended Case Management Order provided that motions to amend the pleadings were to be filed by June 12, 2015. (Docket No. 66.) After several more amendments to the Case Management Order—none of which extended the deadline for motions to amend—but before discovery had begun, Fairbank moved on April 6, 2015, for Summary Judgment against GOPAC on a number of issues: (1) whether the Fairbank Guarantee governed the relationship between the parties; (2) whether GOPAC breached the Fairbank Guarantee by delivering adulterated raw beef containing E. coli to Fairbank in September 2009; (3) whether Fairbank acted as a reasonable buyer in using the same adulterated raw beef; (4) whether GOPAC's delivery of adulterated raw beef constituted a breach of GOPAC's contract with Fairbank and of its express and implied warranties, and (5) whether the adulterated raw beef that GOPAC delivered to Fairbank caused the Northeast Outbreak and Fairbank's resulting damages. (Docket No. 71-1 at p. 2.) Although it vigorously opposed Fairbank's motion regarding the majority of these issues, GOPAC conceded that the Fairbank Guarantee governed the

parties' relationship. (See GOPAC's Memorandum in Opposition to Summary Judgment, Docket No. 78 at p. 10.) Magistrate Judge McCarthy concluded in a Report and Recommendation that the Fairbank Guarantee governed the parties' relationship, but recommended denial of summary judgment on other issues. (Docket No. 93.) This Court adopted Judge McCarthy's Report and Recommendation in full on August 26, 2016. (Docket No. 109.)

The parties proceeded to discovery, with several extensions being sought and several amended CMOs being issued—none of which provided a new date for the filing of amended pleadings. (See Docket Nos. 118, 126, 128, 133.)

On February 25, 2019, GOPAC moved for leave to file an amended answer and for reconsideration of the grant of summary judgment on the matter it had conceded. (Docket No. 135.) GOPAC asserted that late in 2018 it had obtained documentation that informed it—for the first time—that Fairbank was not "owned and operated" by American Fresh Foods or American Foodservice, but rather by an entity called AFA. (Id. at pp. 1, 8-10.) GOPAC asserted that, prior to this discovery, it had relied on Fairbank's representations that it was owned by American Fresh Foods or American Foodservice. (Id. at p. 8.) GOPAC argued that this new information meant that the Fairbank Guarantee was inapplicable to the parties' relationship. (Docket No. 155 at p. 19.)

Judge McCarthy recommended denial of GOPAC's motion, finding that GOPAC had not exercised reasonable diligence in ascertaining the ownership of Fairbank, and that amendment after the deadline and reconsideration of the summary judgment grant were therefore not warranted. On February 10, 2020, this Court adopted Judge McCarthy's recommendations in full and denied both motions. (Docket No. 169.)

4

GOPAC now seeks leave to appeal this Court's denial of its motion to amend its answer and for reconsideration the grant of summary judgment determining that the Fairbank Guarantee governs the parties' relationship. (Docket No. 174.) GOPAC argues that this Court adopted an improper "inquiry notice" standard in denying its motions to amend and for reconsideration. (Id. at p. 2.) GOPAC also seeks to stay proceedings during interlocutory appeal. (Id. at p. 3.) Fairbank opposes GOPAC's motion.

### III.  DISCUSSION

GOPAC seeks certification for interlocutory appeal of what it claims is this Court's improper use of an "inquiry notice" standard in assessing whether GOPAC showed reasonable diligence warranting leave to amend and reconsideration.

For the following reasons, this Court finds that GOPAC does not meet the stringent requirements for certification for interlocutory appeal.

**A.    Fairbank's waiver argument**

Fairbank argues that GOPAC is barred from appealing this Court's adoption of Judge McCarthy's recommendation because it failed preserve the issue by objecting to the use of an "inquiry notice" standard in Judge McCarthy's Report and Recommendation.

Local Civil Rule 72 (b) of the Western District of New York provides that written objections to a magistrate's report "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision. Mario v. P &

C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) (citing Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)). Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72 (b). Id.

GOPAC's objections focused on Judge McCarthy's finding that it did not exercise reasonable diligence, that the "newly discovered evidence" would not have changed the outcome of the prior summary judgment ruling, and that GOPAC has not shown that manifest injustice justifies reconsideration. In other words, GOPAC's objections focus on how Judge McCarthy applied the unchallenged standards to GOPAC's facts.

In passing, GOPAC stated in its objections that Judge McCarthy "erroneously found" that a 2011 deposition put GOPAC on "inquiry notice" regarding Fairbank's ownership. (Docket No. 155 at pp. 19-20.) GOPAC argued that Judge McCarthy "cite[d] no authority for the proposition that a failure to inquire in a prior case can have substantive—perhaps even dispositive—impact in this case." (Id. at p. 20.) GOPAC did specify that it disputed Judge McCarthy's alleged use of an "inquiry notice" standard, but it did not cite any authority for the proposition that inquiry notice is a clearly erroneous standard.  While this is minimal notice, it does identify the question of whether a failure to inquire is the proper standard in a good-cause inquiry. Thus, this Court finds that GOPAC has not waived this argument, and proceeds to consider GOPAC's motion on its merits.

**B.    Interlocutory Appeal**

GOPAC seeks certification of an interlocutory appeal of this Court's denial of its motions to amend and for reconsideration.

An interlocutory appeal is considered an "extraordinary remedy" that lies within a

district court's "unfettered discretion." Transp. Workers Union of Am., Local 100 v. NYC Transit Auth., 358 F. Supp. 2d 347, 351 (S.D.N.Y. 2005). Such unfettered discretion can be for "any reason, including docket congestion" and "the system-wide costs and benefits of allowing the appeal." Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 24 (2d Cir. 1990). "Only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." In re Facebook, Inc., IPO Sec. & Derivative Litig., 986 F. Supp. 2d 524, 529–30 (S.D.N.Y. 2014) (quoting McNeil v. Aguilos, 820 F. Supp. 77, 79 (S.D.N.Y. 1993) (Sotomayor, J.) (internal quotations omitted)).

Pursuant to 28 U.S.C. § 1292 (b), a district court *may* certify an order for interlocutory appeal when the district judge determines that such an order (a) involves a controlling question of law as to which (b) there is substantial ground for difference of opinion and (c) that an immediate appeal from the order may materially advance the ultimate termination of the litigation. All three of these prerequisites must be met. In re Facebook, 986 F. Supp. 2d at 529–30 (citing Casey v. Long Island R.R., 406 F.3d 142, 146 (2d Cir. 2005) ("The proponents of an interlocutory appeal have the burden of showing that all three of the substantive criteria are met.")).

A controlling question of law "must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." Retail Pipeline, LLC v. JDA Software Grp., Inc., No. 2:17-CV-00067, 2018 WL 2298355, at *2 (D. Vt. May 21, 2018) (citing Youngers v. Virtus Inv. Partners Inc., 228 F. Supp. 3d 295, 298 (S.D.N.Y. 2017)); see also Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 96 (2d Cir. 2004) ("By its plain terms, Section 1292(b) may only be used to

7

challenge legal determinations.").

GOPAC seeks to appeal this Court's denial of leave to amend and its motion for reconsideration. It argues that a controlling question of law is involved because this Court mistakenly used an "inquiry notice" standard instead of the proper "reasonable discretion" standard. GOPAC concedes that this Court had discretion to make a good-cause determination, but argues that it abused its discretion by using the wrong legal standard in determining whether good cause existed. Zervos v. Verizon New York, Inc., 252 F.3d 163, 168-69 (2d Cir. 2001).

GOPAC also argues that immediate resolution of this issue now would materially advance the termination of this case because once its concession that the Fairbank Guarantee governs the parties' relations is removed, it can quickly defeat all of Fairbank's claims against it.

**C.      Interlocutory appeal is not warranted regarding this Court's denial of GOPAC's motion to amend its answer.**

As to the denial of its motion to amend, GOPAC has not established that there is a controlling issue of law or that resolution of this matter would materially advance the termination of this case.

### a) Legal Standard

A pleading can only be amended after the dates set forth in a case management order when a court finds "good cause." Fed. R. Civ. P. 16 (b). A finding of "good cause" depends on the diligence of the moving party. Parker v. Columbia Pictures Indus., 204 F.3d 326, 340–41 (2d Cir. 2000) (finding no diligence where plaintiff claimed he did not discover his contractual entitlement to six months' paid leave until receiving defendant's motion for summary judgment, but in fact received a copy of the relevant leave policy

when he began work at the company).

To satisfy the good cause standard, "the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." Enzymotec Ltd. v. NBTY, Inc., 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010) (citing Sokol Holdings, Inc. v. BMD Munai, Inc., No. 05–CV–3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009). The good cause standard "is not satisfied when the proposed amendment rests on information 'that the party knew, or should have known, in advance of the deadline.'" Id. (quotation omitted).

### b) This Court applied the proper reasonable diligence standard to GOPAC's motion to amend.

GOPAC argues that this Court did not apply the above standard, but rather, applied an inquiry notice standard to its analysis. In particular, GOPAC objects to Judge McCarthy's comment that it had evidence of Fairbank's ownership in 2011, from a deposition in a prior case, and that "if GOPAC wanted further information about Fairbank's ownership, it should have followed up at that time." (Report and Recommendation, Docket No. 152 at p. 4.) GOPAC argues that this represents an improper "inquiry notice" standard that sets the bar too high and that it is unfair to hold it to expect it to have inquired into 2011 deposition testimony in a case that was not litigated on contractual grounds.

In making this argument, GOPAC purports to find a distinction between cases where a party first obtains *facts related to new claim or defense* after a deadline to amend has passed, and moves to amend soon after obtaining the facts—where courts often find reasonable diligence—, and cases where a party either knew, or "because it had all the information it needed—should have known the basis for amending,"—which, GOPAC argues, demonstrates a lack of reasonable diligence. (Docket No. 174 at p. 13.) Compare

Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc., 283 F.R.D. 142, 148–49 (S.D.N.Y. 2012) (finding diligence and allowing amendment filed two months after facts allegedly learned during discovery); Enzymotec Ltd. v. NBTY, Inc., 754 F.Supp.2d 527, 537 (E.D.N.Y. 2010) (finding diligence when plaintiff "may have suspected" that defendant breached an agreement but only filed motion to amend when it obtained facts supporting a claim for breach, "based on factual allegations, not factual speculation") with CRA Holdings U.S., Inc. & Subsidiaries v. United States, No. 1:15-CV-00239 EAW, 2019 WL 4544390, at *4 (W.D.N.Y. Sept. 19, 2019) (denying amendment where there was no dispute that Plaintiffs were aware of all the facts underlying their claim prior to deadline for seeking to amend); Rent-A-Ctr., Inc. v. 47 Mamaroneck Ave. Corp., 215 F.R.D. 100, 104 (S.D.N.Y. 2003) (finding a lack of diligence where "the substance of the defendants' 'new' claim was known when the defendants filed their original amended answer and added their counterclaim").

This distinction does not help GOPAC, because GOPAC falls into the latter category, which GOPAC itself agrees does not represent reasonable diligence. In his Report and Recommendation, Judge McCarthy in fact found that GOPAC had the information in its possession as of 2011. (See Docket No. 152 at p. 3.) GOPAC's real problem lies with Judge McCarthy's subsequent, explanatory, statement that if GOPAC wanted *further* information," it "should have followed up at that time." (Id. at p. 4.) But this statement refers to any *further* information GOPAC might have obtained, after finding that GOPAC had sufficient information with the 2011 deposition testimony. Thus, neither Judge McCarthy, nor this Court in adopting his Report and Recommendation, relied on an "inquiry notice" standard.

The record provides additional evidence that GOPAC had sufficient knowledge both that its contractual privity with Fairbank might be an issue, and that Fairbank was owned by AFA, before the deadline to amend its answer. First, the 2013 complaint clearly alleges contract claims. (See Docket No. 1.) In a breach-of-contract case, relying on an adversary's past representations as to the existence of contractual privity does not demonstrate reasonable diligence.

Additionally, Fairbank filed and served a corporate disclosure statement on November 22, 2013. (Docket No. 17.) This document states clearly that AFA is the owner of Fairbank. (Id.) Far from exercising the bad-faith deception GOPAC attributes to it, Fairbank timely notified GOPAC of its corporate owner. GOPAC had this information about AFA's ownership of Fairbank well before the last deadline to amend its pleadings, and well before it conceded that the Fairbank Guarantee controlled the parties' relationship. (Docket No. 77.) It is not an improper invocation of "inquiry notice" to suggest that a corporate disclosure statement should have alerted GOPAC to Fairbank's corporate owner.

This Court further finds that an immediate appeal would not materially advance the ultimate termination of this case. First, it is unlikely that a differently nuanced reasonable-diligence inquiry would come to a different outcome. Further, an appeal would prolong the already drawn-out litigation in this matter.

For all the foregoing reasons, this Court will deny GOPAC's motion for certification of an interlocutory appeal of this Court's denial of its motion to amend.

**D.     Interlocutory appeal is not warranted regarding this Court's denial of GOPAC's motion for reconsideration.**

Fairbank argues that GOPAC failed to move to appeal this Court's denial of its

11

motion for reconsideration. This Court assumes, from the references to reconsideration in its briefing, that GOPAC does seek to appeal the denial of reconsideration. (See Docket No. 174 at pp. 6, 9.) Nevertheless, this Court will deny GOPAC's motion because the stringent requirements for interlocutory appeal are not met.

### a) Legal Standard for Reconsideration

A court retains discretion to reconsider and revise decisions made prior to the final entry of judgment in a case. Fed. R. Civ. P. 54 (b). The major grounds justifying reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." DiLaura v. Power Auth. of N.Y., 982 F.2d 73, 76 (2d Cir. 1992).

A party seeking reconsideration based on new evidence must demonstrate "that the … evidence was neither in [its] possession nor available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered," and that the evidence is "of such importance that it probably would have changed the outcome." Vicuna v. O.P. Schuman & Sons, Inc., 298 F. Supp. 3d 419, 433 (E.D.N.Y. 2017).

"With respect to the [manifest injustice inquiry], to justify review of a decision, the Court must have 'a clear conviction of error on a point of law that is certain to recur.'" Neubecker v. New York State, 387 F. Supp. 3d 302, 304 (W.D.N.Y. 2019) (citing Turner v. Vill. of Lakewood, No. 11-CV-211-A, 2013 WL 5437370, at *3-4 (W.D.N.Y. Sept. 27, 2013) (quoting United States v. Adegbite, 877 F.2d 174, 178 (2d Cir. 1989)). "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court.'" Id. (citing Boyde v. Osborne, No. 10-CV-6651, 2013 WL 6662862, at *1 (W.D.N.Y. Dec. 16, 2013) (quoting Griffin Indus.,

Inc. v. Petrojam, Ltd., 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999)).

"[I]f the movant had the opportunity to present the evidence or litigate the issue earlier but did not do so, either because of inadvertence or as a strategic maneuver, the Rule 54(b) motion should be denied." Vornado Realty Tr. v. Castlton Envtl. Contractors, LLC, No. 08-CV-4823 WFK JO, 2013 WL 5719000, at *3 (E.D.N.Y. Oct. 18, 2013). In other words, "a motion for reconsideration does not mean the parties get a 'do over.'" J.S. v. Attica Cent. Sch., No. 00-CV-513S, 2011 WL 6140527, at *1 (W.D.N.Y. Dec. 9, 2011) (quoting Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union, No. 00–CV–3613, 2004 WL 1943099 (S.D.N.Y. Aug.27, 2004)).

### b) This Court applied the proper reasonable diligence standard to GOPAC's motion for reconsideration.

An interlocutory appeal of this Court's denial of GOPAC's motion for reconsideration is not warranted for the same reasons discussed above, namely, because there is no controlling question of law at issue and because resolution of this matter would not materially advance the termination of this action.

GOPAC again argues that this Court mistakenly applied an inquiry-notice standard to its consideration of whether GOPAC had sufficiently alleged new evidence that warranted reconsideration. But this argument fails. This Court, in adopting Judge McCarthy's Report and Recommendation, used a proper reasonable-diligence inquiry. To show "reasonable diligence," GOPAC was required to demonstrate "that the …evidence was neither in [its] possession nor available upon the exercise of reasonable diligence" at the time the earlier decision was rendered and that the evidence is "of such importance that it probably would have changed the outcome." Vicuna, 298 F. Supp. 3d at 433. In adopting Judge McCarthy's Report and Recommendation, this Court found that

GOPAC did have the evidence in its possession from the 2011 deposition. It further finds that GOPAC was on notice of Fairbank's contract claims from the complaint, and on notice of Fairbank's owner from Fairbank's corporate disclosure statement.

This Court thus finds that GOPAC has not shown that the "new" evidence was not in its possession nor available upon the exercise of reasonable diligence. There is no use of an "inquiry notice" standard here, and there is therefore no controlling question of law meriting interlocutory appeal.

GOPAC argues that this Court erred in not finding manifest injustice warranting reconsideration. It argues that the finding that the Fairbank Guarantee controls the relations of the parties was made in prior third-party indemnification actions, in which GOPAC lacked incentive to pursue discovery regarding Fairbank's owner. It is true that a court considering the preclusive effect of another court's holding must inquire about fairness to the nonmoving party, and look at its opportunity and incentive to defend in the prior action. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 332–33, 99 S. Ct. 645, 652, 58 L. Ed. 2d 552 (1979).

But the question of incentive to defend is not relevant here, because this Court did not grant summary judgment on the basis of preclusion. Rather, it relied on GOPAC's *own concession* that the Fairbank Guarantee controlled. Assuming that in the present case GOPAC read the complaint and the filings, there is no manifest injustice in holding it to its own admissions.

Further, as discussed above, granting GOPAC a "do-over" on this issue would result in docket congestion and a rehashing of issues that GOPAC failed to pursue earlier.

"[If] the movant had the opportunity to present the evidence or litigate the issue

14

earlier but did not do so, either because of inadvertence or as a strategic maneuver, the Rule 54(b) motion should be denied." Vornado Realty 2013 WL 5719000, at *3. This is the case here. Interlocutory appeal of this Court's denial of GOPAC's motion for reconsideration is therefore denied.

## IV.  CONCLUSION

GOPAC's motion for leave to file an interlocutory appeal is denied. There is no controlling question of law warranting the extraordinary remedy of interlocutory appeal, either in this court's denial of GOPAC's motion to amend its answer or in its denial of GOPAC's motion for reconsideration. This Court applied the correct standards to GOPAC's actions and found that it did not exercise the required reasonable diligence. Further, an immediate appeal of this matter would not materially advance the termination of this case. GOPAC still has the ordinary remedy of appeal after this case is resolved on its merits, but the extraordinary remedy of interlocutory appeal is not warranted.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Amend this Court's February 10, 2020, Order for Certification for Interlocutory Appeal and to Stay Proceedings Pending Appeal (Docket No. 173) is DENIED.

SO ORDERED.

Dated:     December 18, 2020
           Buffalo, New York

                                                    s/William M. Skretny
                                                    WILLIAM M. SKRETNY
                                                    United States District Judge

15